# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| **ADAM E. BILLINGS**, <br><br> Movant, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br> Respondent. | Civil No. 20-3064-CV-S-MDH-P <br> Crim. No. 17-3020-01-CR-S-MDH |

## GOVERNMENT'S RESPONSE AND SUGGESTIONS IN OPPOSITION TO MOVANT'S MOTION UNDER 28 U.S.C. § 2255

The respondent, the United States of America, respectfully requests that this Court deny the motion under 28 U.S.C. § 2255 filed by the movant, Adam E. Billings, seeking to vacate his conviction and sentence. The Government provides the following suggestions in opposition to Billings's motion:

### I. Summary

Billings pleaded guilty, under a written plea agreement, to possession with the intent to distribute 50 grams or more of methamphetamine (actual), and was sentenced to 292 months' imprisonment, to be followed by five years' supervised release. Billings's sentence was affirmed on appeal.

Billings has now filed a *pro se* motion under 28 U.S.C. § 2255 seeking to vacate his conviction and sentence based upon ineffective assistance of counsel and prosecutorial misconduct. Specifically, under Ground One, Billings claims that counsel was ineffective for: (1) failing to enforce the plea agreement's terms with regards to the career offender

enhancement; (2) failing to investigate and work to reduce his prior felony convictions to misdemeanors; (3) failing to effectively argue against the drug quantity and purity level during sentencing; (4) failing to argue against the leadership role enhancement; and (5) dooming the appeal by filing an *Anders* brief. Under Ground Two, Billings claims that the Government engaged in prosecutorial misconduct by breaching the plea agreement due to dropping the § 851 enhancement, but allowing the presentence investigation report to assess the career offender enhancement; and violating his Fourth Amendment rights when officers searched his residence without his consent.

Billings fails to demonstrate ineffective assistance or to prove prosecutorial misconduct. The individual assertions are either contrary to the record, are in disagreement with policies set forth in the Sentencing Guidelines, or fail to show prejudice. Since the claims fail as a matter of law based on the current record, this Court should deny Billings's motion without holding an evidentiary hearing. Since the claims are not debatable among jurists of reason, this Court should deny a certificate of appealability.

## II. Factual and Procedural History

On February 14, 2017, a grand jury returned a single-count indictment charging Billings with possession with the intent to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). (D.E. 1.)[1]

On October 24, 2017, Billings appeared before this Court and pleaded guilty, pursuant to a plea agreement, to the indictment. (D.E. 31.) The plea agreement contained

---

[1] "D.E." refers to this Court's docket entry numbers in Billings's underlying criminal case, No. 17-03020-01-CR-S-MDH.

a stipulated factual basis supporting the guilty plea.  (D.E. 30; Plea Agrmt. 2-3.)  Billings waived his constitutional rights to a jury trial, and also waived his right to appeal or collaterally attack his conviction or sentence.  (Plea Agrmt. 8-9.)  Billings acknowledged that his entry into the plea agreement was freely and voluntarily given, that it was not the product of any threats or promises, and that he was satisfied with defense counsel's performance.  (Plea Agrmt. 12.)  Billings executed the plea agreement on October 24, 2017.  (Plea Agrmt. 14.)

At the change-of-plea hearing, Billings twice agreed that he was pleading guilty to the indictment.  (Plea Tr. 7, 13.)  Billings acknowledged that upon pleading guilty, he faced a statutory sentence of not less than 10 years' imprisonment, not more than life imprisonment, and not less than five years' supervised release.  (Plea Tr. 7-8.)  Billings confirmed that he read the terms of the plea agreement.  (Plea Tr. 4.)  Billings stated that no coercion or promises outside of the promises in the plea agreement had induced his guilty plea.  (Plea Tr. 6.)  Billings acknowledged this Court's sentencing discretion.  (Plea Tr. 6-7.)  Billings confirmed that he was waiving his rights to a jury trial and the statements contained within the plea agreement's factual basis were true.  (Plea Tr. 10-13.)  Billings also confirmed that he would be waiving certain appellate rights.  (Plea Tr. 12.)  This Court then found that Billings entered into the plea agreement understandingly, knowingly, and voluntarily.  (Plea Tr. 14.)

On January 31, 2018, the United States Probation Office prepared and filed the final presentence investigation report (PSR).  (D.E. 32.)  The PSR contained a factual recitation of the offense background.  (PSR ¶¶ 3-8.)  The PSR calculated a base offense level of 36,

under U.S.S.G. § 2D1.1(c)(2), for an offense involving at least 1.5 kilograms, but less than 4.5 kilograms of methamphetamine (actual). (PSR ¶ 13.) The PSR also applied a two-level adjustment, under § 3B1.1(c), for being a supervisor or manager. (PSR ¶¶ 26-27.) The PSR found Billings to be a career offender. (PSR ¶ 19.) However, the base offense level based on the drug quantity with enhancements yielded a level of 38, which was greater than the level of 37 from the career offender provision. Therefore, the greater offense level of 38 was used. (PSR ¶ 19.) The PSR then applied the three-level reduction for acceptance of responsibility, under § 3E1.1(a) and (b), yielding a total offense level of 35. (PSR ¶¶ 20-22.) The PSR calculated a criminal history score of 14, which resulted in a criminal history category of VI. (PSR ¶ 25-34.) This produced an advisory Sentencing Guidelines range of 292 to 365 months. (PSR ¶ 57.) Billings's counsel filed written objections to the drug quantity determination and made no factual admissions relating to Billings's criminal history. (PSR Adden. Jan. 31, 2018.)

On April 11, 2018, Billings appeared for sentencing. (D.E. 37.) Defense counsel continued the objection to the drug quantity, contending the calculated amount was speculative. (Sent. Tr. 6-7). The Government presented Exhibit 1, which was the laboratory report testing finding the methamphetamine seized to be 100 percent pure. (Sent. Tr. 7.) The Court overruled counsel's objection and found Billings's applicable Guidelines range to be 292 to 365 months' imprisonment. (Sent. Tr. 9.) The Government argued for a sentence within the Guidelines range, and defense counsel argued for a sentence below the Guidelines range. (Sent. Tr. 10-17.) After considering the factors set

forth under 18 U.S.C. § 3553, this Court sentenced Billings to 292 months' imprisonment, followed by five years' supervised release. (Sent. Tr. 18-24.)

Billings appealed. *United States v. Billings*, 748 Fed.Appx. 84 (8th Cir. 2019). Counsel submitted an *Anders* brief, arguing that this Court abused its discretion by imposing an unreasonable sentence of 292 months, which was greater than necessary for the purposes of 18 U.S.C. § 3553(a). *Id.* at 85; *see Anders v. California*, 386 U.S. 738 (1967). The Eighth Circuit reviewed the record, concluded this Court did not impose an unreasonable sentence, found no nonfrivolous issues, and affirmed. *Id*; *see Penson v. Ohio*, 488 U.S. 75 (1988).

On March 3, 2020, Billings filed the instant motion seeking to vacate his conviction and sentence. (Civ. D.E. 1.)[2] The Government does not dispute that the motion, although without merit, is timely under 28 U.S.C. § 2255(f)(1).

### III. Argument and Authorities

#### A. *Billings's Claims of Ineffective Assistance of Counsel and Prosecutorial Misconduct Lack Merit*

##### 1. *Ineffectiveness Generally*

Claims alleging ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced

---

[2]"Civ. D.E." refers to the docket entry numbers in the instant § 2255 proceeding, No. 20-03064-CV-S-MDH-P.

his defense.'" *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quoting *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second guessing of trial counsel's strategic decisions. *Id*. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lawrence*, 961 F.2d at 115 (quoting *Strickland*, 466 U.S. at 694).

*Nave*, 62 F.3d at 1035.

The Supreme Court has held that the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To establish prejudice in the sentencing context, a defendant must show a reasonable probability that, but for counsel's errors, the defendant would have received a lesser sentence than he did. *Jeffries v. United States*, 721 F.3d 1008, 1014 (8th Cir. 2013) (citing *Puckett v. United States*, 556 U.S. 129, 142 n. 4 (2009)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694). "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen*, *id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

"In a § 2255 proceeding, the burden of proof with regard to each ground for relief rests upon the petitioner." *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969).

## 2. *No Ineffective Assistance of Counsel or Prosecutorial Misconduct in Failing to Enforce or Abide by the Plea-Agreement's Terms*

In related arguments, Billings claims that counsel was ineffective and that the Government engaged in prosecutorial misconduct in failing to enforce the negotiated terms of the plea agreement. Billings contends that the breach occurred by replacing the § 851 enhancement with the career offender designation. (Billings Mot. 26-29, 45-48.) Billings states that, "the only reason I agreed to plead guilty was due to the government dropping the § 851 enhancement" but the "enhancement was put, instead, on my PSI." (Billings Mot. 26, 28.) Billings claims that utilizing his prior convictions to apply the career offender enhancement renders the plea to be involuntary. (Billings Mot. 47.)

Billings seems to believe the statutory § 851 enhancement is synonymous to a career offender designation under the Sentencing Guidelines. An § 851 enhancement is not the same thing as a Sentencing Guidelines' career offender designation. An § 851 enhancement changes a defendant's statutory range of punishment. In Billings's case, had the Government pursued § 851 enhancements at sentencing, Billings would have faced a statutory mandatory-minimum sentence of 20 years' or life imprisonment, depending on whether the Government provided notice of one prior drug felony or two – a fact that Billings acknowledges. (*See* Billings Mot. 48, "the government could have pushed for a two-prior-conviction enhancement with § 851 and justified a mandatory LIFE sentence").

The career offender designation is accounted for within the Sentencing Guidelines. *See* U.S.S.G. § 4B1.1. Unlike an § 851 enhancement, the Sentencing Guidelines do not fix the permissible range of sentences, but merely guide the exercise of a sentencing court's

discretion in choosing an appropriate sentence within the statutory range. *Beckles v. United States*, 580 U.S. —, 137 S.Ct. 886, 895 (2017). During Billings's change-of-plea hearing, he acknowledged that the Sentencing Guidelines were advisory and that he could be sentenced either above or below that range, up to life imprisonment, based on this Court's discretion. (Plea Tr. 8-9.) Billings also confirmed his ability to read and write, and told this Court that he had read the plea agreement and had discussed the terms with counsel. (Plea Tr. 4.) The written plea agreement expressly stated that the only agreement between the parties as to the Sentencing Guidelines were contained in paragraph 10. (Plea Agrmt. 7, ¶ 11.) Paragraph 10 states, in relevant part:

> The parties have no agreement regarding the applicability of any enhancements applicable to the specific facts of this case and are free to object to the application of any enhancements applied in the presentence report. (Plea Agrmt. 6, ¶ 10c.)
>
> There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation. (Plea Agrmt. 7, ¶ 10e.)

Billings expressly agreed that he could not withdraw his guilty plea solely because he did not like the sentence length. (Plea Agrmt. 4, 5 ¶¶ 6g, 9; Plea Tr. 10.) Billings signed the plea agreement acknowledging that he entered into it freely and voluntarily. (Plea Agrmt. 12, ¶ 20). Billings confirmed under oath that he signed the agreement without threats or promises outside of the agreement. (Plea Tr. 4-6.)

Because there was no agreement relating to the PSR's enhancements, Billings has failed to demonstrate ineffective assistance or prosecutorial misconduct in applying the

career offender enhancement under the Sentencing Guidelines.[3] The claim that defense counsel and the Government breached the plea agreement is contrary to the record. These claims should be denied.

### 3. *No Error in Counsel Failing to Reduce Prior Felony Drug Convictions to Misdemeanors*

Billings next argues that counsel performed deficiently by failing to investigate and attempt to get his prior felony drug convictions reduced to misdemeanors, increasing his criminal history score and base offense level with the career offender designation. (Billings Mot. 4, 25, 30-32, 35.) Billings speculates that his prior drug convictions in California could have been expunged as a result of California's Proposition 47 and California Penal Code § 1203.4. (PSR ¶¶ 25-29.)

Whether an expunged conviction qualifies under federal law has been discussed by the Eighth Circuit. *See United States v. Nelson*, 589 F.3d 924, 925-26 (8th Cir. 2009); *United States v. Lincoln*, 408 F.3d 522, 525 (8th Cir. 2005); and *United States v. Townsend,* 408 F.3d 1020, 1024 (8th Cir. 2005). In *Townsend*, the court noted "[f]ederal law, not state law, determines whether a prior sentence is counted for criminal history purposes. *Townsend*, 408 F.3d at 1024 (citing *United States v. Morgan,* 390 F.3d 1072, 1074 (8th Cir. 2004)). "[A] state's use of the term 'expunge' is not controlling in determining whether a conviction is properly included in calculating a defendant's criminal history category." *Id.* The court found that since "Townsend's Iowa state-court conviction for

---

[3]"Plea agreements are contractual in nature, and should be interpreted according to general contract principles." *United States v. Guice*, 925 F.3d 990, 993 (8th Cir. 2019) (citing *United States v. DeWitt*, 366 F.3d 667, 669 (8th Cir. 2004)).

third-degree burglary was not expunged due to constitutional invalidity, innocence, or a mistake of law, as required under the Guidelines," the district court properly counted the prior conviction in determining Townsend's criminal history category. *Id.* at 1025. In *Lincoln*, the movant argued that his prior marijuana offense was "expunged" under Iowa law and could not be counted in assessing his criminal history under U.S.S.G. § 4A1.2(j). *Lincoln*, 408 F.3d at 525. The Eighth Circuit citing its decision in *Townsend*, 408 F.3d at 1025, concluded that the conviction "was not expunged due to constitutional invalidity, innocence, or a mistake of law, as required under the Guidelines." *Id.* In *Nelson*, the Eighth Circuit clarified that the "decision in *Townsend* was predicated on the *basis* for expunging the state conviction, not on the *effect* of expungement." *Nelson*, 589 F.3d at 925 (original emphasis).

Billings's prior felony convictions have not been expunged. Billings provides nothing more than speculation that the priors could be expunged. Speculation is insufficient to show "a reasonable probability that the result would have been different but for the error." *United States v. Pirani*, 406 F.3d 543, 553 (8th Cir. 2005). Billings also makes no allegations or showing that his prior convictions could be expunged due to "constitutional invalidity, innocence, or a mistake of law, as required under the Guidelines." Accordingly, the convictions were correctly accounted for in assessing his criminal history score. As Billings acknowledges, the career offender designation had no impact on his total offense level, because the base offense level and Chapter Three enhancement yielded a score of 38, which is higher than the level of 37 under the career offender designation. (Billings Mot. 21, fn 4.)

The Sentencing Guidelines define a "prior felony conviction" as "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, *regardless of whether such offense is specifically designated as a felony* and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2, Appl. n. 1 (emphasis added). Billings does not contest the fact that his three prior California drug convictions were punishable for a term exceeding one year. In fact, Billings was sentenced to two years' imprisonment in Case No. 00NF0562; five years' imprisonment in Case No. 04WF2549; and three years' imprisonment in Case No. 08NF0881.

Failure to advance a meritless legal argument cannot constitute ineffective assistance. *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994). This claim should be denied.

### 4. *No Error of Counsel or Prosecutorial Misconduct Regarding Drug Quantity and Purity*

Within related arguments, Billings claims that defense counsel was ineffective and that the Government engaged in prosecutorial misconduct regarding drug quantities and the purity level of the methamphetamine that was accounted for but never actually seized. (Billings Mot. 32-34, 43-45.) Billings argues that while he was found with 110.10 grams of methamphetamine (that had 100% purity level) in his possession, the PSR finding of 1.5 kilograms to 4.5 kilograms of methamphetamine (actual), based upon his post-*Miranda* statements, was speculative and never measured for purity. (Billings Mot. 43.) Billings alleges that this finding violated his constitutional rights and that counsel failed to effectively argue against it. (Billings Mot. 33-34, 45.)

-11-
Case 6:20-cv-03064-MDH   Document 5   Filed 03/31/20   Page 11 of 20

Billings is unable to show that counsel performed deficiently or that the Government engaged in prosecutorial misconduct. First, counsel argued that the drug quantities and respective purity level were speculative within his objections to the PSR, in Billings's sentencing memorandum, and again during the sentencing hearing. (D.E. 32 at 17; D.E. 35 at 1-2; D.E. 44 at 6-7.) Billings acknowledges this objection:

> Through counsel, I objected to [ ] the base offense level calculation as being speculative, and that the sentencing range that resulted in the PSI calculations resulted in a substantively unreasonable sentence.

(Billings Mot. 19-20.) Counsel's objection was not sustained, as it runs contrary to the guidance set forth within the Sentencing Guidelines and Eighth Circuit case law.

Secondly, the Government did not engage in prosecutorial misconduct. Under U.S.S.G. § 2D1.1, Appl. n. 5, when the amount of drugs seized does not reflect the scale of the offense, "the court shall approximate the quantity of the controlled substance" and may consider, for example, "similar transactions in controlled substances by the defendant."). "The court may make a specific numeric determination of quantity based on imprecise evidence." *United States v. Johnson*, 641 Fed.Appx. 654, 659 (8th Cir. 2016) (quoting *United States v. Roach*, 164 F.3d 403, 413 (8th Cir. 1998)). Those "who challenge the sentencing court's determination of drug quantity face an uphill battle on appeal because we will reverse a determination of drug quantity only if the entire record definitely and firmly convinces us that a mistake has been made." *Id.* (quoting *United States v. Coleman,* 148 F.3d 897, 902 (8th Cir. 1998)). "When a defendant makes admissions regarding drug quantity, a court may rely on the admissions to establish the base offense level." *Id*. (quoting *United States v. Hicks,* 411 F.3d 996, 998 (8th Cir. 2005)).

In Billings's post-*Miranda* interview, he told officers that he had received 10 shipments of methamphetamine through the mail, ranging from a couple of ounces to a pound (16 ounces). (Plea Agrmt. 3.) The PSR conservatively held Billings accountable for 227 grams (a half of a pound) per delivery and a total amount of at least 1.5 kilograms, and up to 4.5 kilograms. (PSR ¶ 8.) Thus, this Court's reliance on the PSR's conservative estimate was reasonable.

> Regarding purity, the Eighth Circuit provides the following guidance:
>
> The government may prove the total quantity of actual methamphetamine in a series of transactions by testing the purity of a seized quantity and applying the percentage of actual methamphetamine in the tested quantity to the unrecovered quantities. *See United States v. Newton*, 31 F.3d 611, 614 (8th Cir. 1994); *accord United States v. Lopes-Montes*, 165 F.3d 730, 731-32 (9th Cir. 1999).

*United States v. Houston*, 338 F.3d 876, 878-79 (8th Cir. 2003); *see also United States v. Long*, 532 F.3d 791, 796 (8th Cir. 2008) (calculating the total quantity of actual (pure) methamphetamine attributable to the defendant by extrapolating the percentage of purity of a tested quantity to the unrecovered quantities). Billings does not challenge the laboratory report showing a 100% purity level of the 110.10 grams of methamphetamine seized. (Sent. Tr. 7.) Since the Government tested the purity of the methamphetamine seized, that purity level may be applied to unrecovered quantities. *See United States v. Walker*, 688 F.3d 416, 423 (8th Cir. 2012) ("reject[ing] arguments demanding direct evidence of drug identity, quantity, or purity" as "contrary to the flexible Guidelines approach of allowing the sentencing court broad discretion to consider a wide range of relevant evidence") (citing *United States v. Newman*, 31 F.3d 611, 614 (8th Cir. 1994)

(rejecting an argument "the exact purity level of the unrecovered [methamphetamine was] impermissibly uncertain" because "the guidelines do not require an exact computation of the drug quantity.").

Billings has failed to show deficient performance under *Strickland*, or that the Government committed prosecutorial misconduct in advocating for the quantity and purity of methamphetamine found by this Court. This claim should be denied.

> *5.  No Error of Counsel in Failing to Challenge the Leadership Adjustment*

Billings claims that counsel was ineffective for failing to challenge the two-level leadership adjustment under U.S.S.G. § 3B1.1(c), because he was not charged with conspiracy and there was no proof that he placed the methamphetamine delivery order. (Billings Mot. 4, 36-38, 41.)

Counsel is not ineffective for making a meritless argument. Under U.S.S.G. § 3B1.1(c), "if the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." § 3B1.1, App. n. 2. The Eighth Circuit has held "that a defendant may be subject to the enhancement even if he managed or supervised only one participant, limited to a single transaction." *United States v. Guzman*, 946 F.3d 1004, 1008 (8th Cir. 2020) (citing *United States v. Valencia*, 829 F. 3d 1007, 1012 (8th Cir. 2016)).

Billings does not contest the fact that he managed or supervised his neighbor. "I paid my neighbor $100 to receive this package and deliver it to me." (Billings Mot. 18,

33; Plea Agrmt. 3.) The enhancement applies upon directing one participant in a single transaction. Billings fails to demonstrate ineffective assistance, and this claim should be denied.

### 6. *No Error of Counsel for Filing an* Anders *Brief*

Billings next claims that appellant counsel was ineffective for filing a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), in that counsel failed to argue against the career offender enhancement, the drug quantity, and the leadership role adjustment used to establish his applicable Sentencing Guidelines range. (Billings Mot. 39-41.)

To establish ineffective assistance of appellate counsel, Billings must show counsel's performance was deficient, and prejudice from that deficiency. *Strickland*, 466 U.S. at 687-88; *Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). On appeal, appellate counsel is expected to bring forth argument and highlight issues that are most likely to prevail. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal."); *Gee v. Groose*, 110 F.3d 1346 (8th Cir. 1997) ("Reasonable appellate strategy requires an attorney to limit the appeal to those issues counsel determines have the highest likelihood of success."); *Otey v. Grammar*, 859 F.2d 575 (8th Cir. 1987) ("This process of 'winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'").

The issues that Billings alleges counsel should have brought on appeal are specifically barred by the terms of his appellate waiver, as they challenge a misapplication

of the Sentencing Guidelines. (*See* Plea Agrmt. 9, ¶ 15b; Billings Mot. 16.) An appeal waiver will be enforced if the appeal falls within the scope of waiver, the defendant knowingly and voluntarily entered into plea agreement and waiver, and enforcing the waiver would not result in miscarriage of justice. *United States v. Andis*, 333 F.3d 886, 889-92 (8th Cir. 2003). The "mere misapplication of the Guidelines does not render the enforcement of an appeal waiver a miscarriage of justice." *United States v. Guice*, 925 F.3d 990, 993 (8th Cir. 2019) (citing *Andis*, 333 F.3d at 892); *see also United States v. Scott*, 627 F.3d 702, 704 (8th Cir. 2010) (finding waiver to be knowing and voluntary where the magistrate judge questioned the defendant about his understanding of the appeal waiver, and the defendant stated he understood he was giving up his right to appeal his sentence).

"Generally, when counsel submits an *Anders* brief, the court independently reviews the record for any nonfrivolous issue. If the court finds a nonfrivolous issue, it will direct counsel to more fully brief the issue." *United States v. Davis*, 508 F.3d 461, 464 (8th Cir. 2007) (internal citations omitted). In *Anders*, the Supreme Court instructed that it is "the duty of the court, and not counsel, to review the record and ultimately decide whether the case is wholly frivolous." *Id*. (citing *Anders*, 386 U.S. at 744).

On appeal, the Eighth Circuit independently reviewed Billings's case and found no nonfrivolous issues. *United States v. Billings*, 748 Fed.Appx. 84, 85 (8th Cir. 2019). Billings fails to demonstrate ineffective assistance, and this claim should be denied.

### 7. *Misapplication of the Sentencing Guidelines is Not Cognizable Under § 2255*

Although couched as ineffective-assistance-of-counsel claims, Billings's § 2255 motion actually attacks the application of the Sentencing Guidelines. Billings's sentence of 292 months is not illegal, and is within the statutory range of up to life imprisonment. Since Billings was sentenced beneath the statutory maximum, any error in applying the Guidelines does not result in an illegal sentence, because the ultimate sentence imposed remains within the limits authorized by Congress. *See Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc) (misapplication of mandatory career offender guideline was not a fundamental error justifying § 2255 relief because "the same 360-month sentence could be reimposed" at resentencing). Furthermore, challenges to the Sentencing Guidelines are not cognizable in a § 2255 motion. *Id.* at 704 ("ordinary questions of guideline interpretation falling short of the 'miscarriage of justice' standard do not present a proper Section 2255 claim").

### 8. *Billings Waived Any Alleged Fourth Amendment Error*

Lastly, Billings claims that the Government committed prosecutorial misconduct when officers searched his residence without his consent, and counsel was ineffective for failing to file a motion to suppress arguing a violation of his Fourth Amendment rights. (Billings Mot. 5, 17, 49-51.)

This Court, however, should not reach the merits of Billings's suppression argument because he waived this issue. *See United States v. Arrellano*, 213 F.3d 427, 430 (8th Cir. 2000) (declining to consider defendant's suppression issue on appeal where the issue was not preserved). "It is well established in this Circuit that a defendant who pleads guilty

waives all nonjurisdictional defenses." *Id*. (citing *United States v. Stewart,* 972 F.2d 216, 217 (8th Cir. 1992); *see also Smith v. United States*, 876 F.2d 655, 657 (8th Cir.) (waiver includes claims regarding search and seizure), *cert. denied*, 493 U.S. 869 (1989)).

As discussed above, Billings freely and voluntarily pleaded guilty to the indictment. (Plea Agrmt. 12; Plea Tr. 6.) Consequently, this claim should be summarily denied.

### B. *An Evidentiary Hearing Is Not Required to Resolve the Claims, and this Court Should Deny a Certificate of Appealability*

"A petitioner is entitled to an evidentiary hearing on a [§] 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id*. (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)); *see also Allen v. United States*, 854 F.3d 428, 433 (8th Cir. 2017) (a § 2255 motion can be dismissed without a hearing if (1) a movant's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact) (internal citation omitted).

As the preceding discussion makes clear, Billings's allegations are contrary to the record and legally insufficient to entitle him to relief. This Court should deny the claims without holding an evidentiary hearing.

Should this Court deny Billings's § 2255 motion, he can appeal that decision to the court of appeals only if this Court issues a certificate of appealability. *See* 28 U.S.C.

§ 2253(c)(1)(B).  A certificate of appealability should be issued only if Billings can make a substantial showing of the denial of a constitutional right or raise an issue that is debatable among jurists of reason or deserving of further proceedings.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Billings's claims fail as a matter of law, and the merits of those claims are not debatable among reasonable jurists or deserving of further consideration.  The Government respectfully urges this Court not only to deny Billings's § 2255 motion, but to also deny a certificate of appealability.

## IV.  <u>Conclusion</u>

Accordingly, for all of the reasons previously outlined, the Government respectfully requests that this Court summarily deny the motion filed by Billings seeking to vacate his conviction and sentence, and also deny a certificate of appealability.

>
> Respectfully submitted,
>
> TIMOTHY A. GARRISON
> United States Attorney
>
> By
>
> */s/ Nhan D. Nguyen*
> NHAN D. NGUYEN
> Assistant United States Attorney
>
> 901 St. Louis, Suite 500
> Springfield, Missouri  65806
> Telephone:  (417) 831-4406
>
> *Attorneys for Respondent*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on March 31, 2020, to the CM-ECF system of the U.S. District Court for the Western District of Missouri for electronic delivery to all counsel of record, and mailed to:

> Adam E. Billings
> Reg. No. 33207-045
> USP Leavenworth
> P.O. Box 1000
> Leavenworth, Kansas  66048

> */s/ Nhan D. Nguyen*
> Nhan D. Nguyen
> Assistant United States Attorney